UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KAREN O. NEWMAN, § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action H-08-1195 |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
| *Defendant.* § | |

# **MEMORANDUM AND ORDER**

Plaintiff Karen O. Newman seeks review of the denial of her request for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act.[1] Newman's motion for summary judgment (Dkt. 15) is denied and the Commissioner's decision is affirmed.

**Background**

Karen O. Newman filed applications under Title II and Title XVI of the Social Security Act in December 2005 alleging disability beginning August 25, 2005 due to depression. A hearing was held before an Administrative Law Judge (ALJ) on October 15, 2007. The ALJ found Newman was not disabled within the meaning of the Act. The Appeals Council denied her request for review on March 17, 2008, and the ALJ's decision became the final decision of the Commission. This appeal followed.

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including final judgment (Dkt. 14).

**Analysis**

    **A.**    **Standard of Review**

Section 405(g) of the Social Security Act sets forth the standard of review in this case. The federal courts review the decision of the Commissioner to deny Social Security benefits to determine whether (1) the Commissioner applied the proper legal standard and (2) the Commissioner's decision is supported by substantial evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence is "more than a scintilla and less than a preponderance." *Masterson*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

In order to qualify for disability benefits, a plaintiff must prove he has a disability, which is defined under the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A) and 1382c(a)(3)(A); *Masterson*, 309 F.3d at 271. The administrative law judge must follow a five-step sequential analysis to determine whether a plaintiff is in fact disabled:

1. Is the claimant currently engaged in substantial gainful activity, *i.e.*, working? If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1? If so, the claimant is disabled. If not, then the inquiry proceeds to question 4.

4. Can claimant still perform his past relevant work? If so, the claimant is not disabled. If not, then the agency must assess the claimant's residual functional capacity.

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work claimant can do? If so, claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. At step five, the burden shifts to the Commissioner to show that employment for the claimant exists in the national economy. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

**B.     Challenges to the ALJ's Decision**

Newman was 44 years old when she filed her applications. She has a high school diploma and previously worked as a nursing assistant. The ALJ found that she had the severe impairment of depression, but retained the residual functional capacity for work at all exertional levels, limited to a "simple, routine work environment with little or no contact with the general public." ALJ determined that Newman could not perform her past work. Based on the testimony of a vocational expert, the ALJ further determined that Newman

could perform work existing in significant numbers in the national economy and thus was not disabled.[2]

Newman asserts that the ALJ erred by: (1) disregarding the disability opinion of her treating physician; (2) failing to find she suffered from the severe impairment of restless leg syndrome; (3) failing to find that Newman meets or equals Listing 12.04; (4) discounting Newman's testimony regarding the severity of her symptoms; and (5) failing to consider the side effects of her medication.

***Treating physician opinion***. Dr. Mina Parikh, Newman's treating physician since March 2006, diagnosed Newman with major depression with psychotic features, and assessed her with a GAF of 45.[3] Dr. Parikh rated Newman's mental functioning as a moderate 5 on a 1-10 scale, and her depression as a 3 on a 0-10 scale.[4] Dr. Parikh's only opinions regarding Newman's ability to work are found in the form of a checked box on a Texas Department of Human Services Form dated March 19, 2007, and a checked box noting permanent disability due to schizoaffective disorder on a form dated November 20, 2007.[5]

---

[2] December 6, 2007 ALJ Decision, Record (Dkt. 6) at 16.

[3] Record at 278. GAF stands for Global Assessment of Functioning. It is a rating on a scale of 1 to 100 reflecting a clinician's judgment of an individual's overall level of psychological, social, and occupational, but not physical, functioning. *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed.2000) (DSM-IV-TR). A GAF score of 41-50 indicates serious symptoms; a score of 51-60 indicates moderate symptoms. *Id.* at 34.

[4] Record at 178-80.

[5] Record at 24, 270. The ALJ noted that the November 2007 form was used for the purpose of securing food stamps and the characterization of the condition as permanent eliminated the need to submit continual paperwork. Tr. at 18.

Newman relies on the Fifth Circuit's decision in *Newton v. Apfel*, which explains the proper weight to be given a treating physician's opinion:

> *Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist*, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 1527(d)(2). Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, *absent other medical opinion evidence based on personal examination or treatment of the claimant*, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

209 F.3d 448, 453 (5th Cir. 2000) (emphasis added).

Newman's reliance on *Newton* is misplaced. First, the opinions of Dr. Parikh are not supported by specific medical records or findings. They are essentially legal conclusions, not medical opinions, and have no special significance. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Second, in this case the record contains medical evidence from an *examining physician*, Dr. J.L. Paterson.[6] Paterson reported that Newman was able to take care of her personal needs, maintain her residence, maintain mobility and engage in other activities of daily living. While Paterson also reported below average concentration and general fund of knowledge, with apparently questionable judgment, he assessed Newman with a GAF of 55.[7]

---

[6] Record at 241-44.

[7] The Commissioner does not endorse the GAF scale for determining disability. *Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). Thus, Dr. Parikh's assessment of a GAF of 45 is not controlling, and

The ALJ did not err in assessing plaintiff's residual functional capacity (RFC) based on the entire medical evidence of record, instead of relying solely on the statements of Dr. Parikh.  Dr. Paterson's report indicates that Newman has no restrictions in activities of daily living, and moderate difficulties in social functioning and concentration.  The hypothetical question posed to the vocational expert at the hearing took into consideration Newman's mental impairments that were supported by the objective medical evidence (*i.e.*, "a simple, routine work environment with little or no contact with the general public.").  Therefore, the ALJ did not err in determining there were other jobs Newman could perform despite Dr. Parikh's conclusory statement that Newman could not work.

*Restless leg syndrome*.  Prior to this appeal, Newman never alleged disability due to restless leg syndrome.  At the hearing, she complained of leg pain and varicose veins, but did not mention restless leg syndrome.  Newman's medical records include no medical diagnosis, clinical findings, or test results relating to restless leg syndrome, nor do they include any assessment of limitations due to this condition (or due to varicose veins).  The only reference to restless leg syndrome is a statement she made to her treating source at South Main Clinic on April 16, 2007.[8]  "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work

---

is also contradicted by Dr. Paterson.

[8]   Record at 348.

experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Newman's unsupported statements are insufficient to establish a severe impairment. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). The ALJ did not err in failing to find Newman suffered from the severe impairment of restless leg syndrome.

***Listing 12.04***. Newman asserts that the ALJ erred by not finding that her impairment meets or equals Listing 12.04 for "Affective Disorders." Listing 12.04 requires, among other things, "marked" impairment in activities of daily living.[9] As noted above, there is evidence in the record from Dr. Paterson that Newman does not suffer marked impairment in activities of daily living. The ALJ's decision is sufficiently supported by the record.

***Claimant credibility***. Newman argues that the ALJ's assessment of her RFC disregards her testimony at the hearing regarding her limited ability to function in daily life. The ALJ concluded that Newman "may experience some of the subjective symptoms . . . which she alleges but not to the degree alleged. The claimant's testimony is an overstatement of her subjective symptoms and functional limitations and is only generally credible."[10] The ALJ explained his reasons for finding that Newman's testimony was contrary to the objective evidence in the record, including that despite suffering major depression since the 1980s, claimant worked steadily from 1985 through 2005, when she was forced to evacuate to Houston from New Orleans due to Hurricane Katrina; that she continues to suffer symptoms

---

[9]   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B).

[10]  Record at 17.

of depression yet manages to maintain a household and care for a minor child; and that while she reports no social life, she has friends who drive her to appointments. The ALJ is entitled to determine the credibility of witnesses. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This court cannot say that the ALJ's credibility assessment here is in error.

***Medication side effects***. Newman's medical records do not support her allegations regarding her medication side effects. At the hearing, Newman testified that she suffers "trembling, dropping things, don't remember where things go at"[11] as a result of her medication, but she did not list this on any of her applications, and apparently never reported it to her doctor. Dr. Parikh repeatedly noted Newman had no side effects from her medication.[12] The ALJ did not err in failing to take into consideration any limitations caused by Newman's alleged medication side effects.

**Conclusion**

Newman has failed to show that the ALJ's decision contains an error of law or is not supported by substantial evidence. Newman's motion for summary judgment is denied. The decision of the Commission is affirmed. The court will issue a separate final judgment.

Signed at Houston, Texas on January 5, 2009.

Stephen Wm Smith
United States Magistrate Judge

---

[11] Record at 38.

[12] Record at 178, 281, 297, 305, 309.